IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

YOLONDA DELEON and
SIRENA STELL, individually and on
behalf of all others similarly situated,

*Plaintiffs*,

v.

MEDICALODGES, INC.,

*Defendant*.

Case No. 2:23-CV-2224-EFM

**MEMORANDUM AND ORDER**

Before the Court is Defendant's Partial Motion to Dismiss Counts II and III of Plaintiffs' First Amended Complaint (Doc. 21). In Count I, Plaintiffs seek to recover all unpaid wages, including overtime premiums for hours accrued beyond forty per week, under the Fair Labor Standards Act[1] ("FLSA"). Defendant does not contest Count I. In Count II, Plaintiffs seek to recover unpaid "gap time" wages, a penalty up to an equal amount, and interest under the Kansas Wage Payment Act[2] ("KWPA"). Defendant requests dismissal, arguing that the KWPA does not allow for recovery of minimum wage and overtime relief. In Count III, Plaintiffs seek to recover gap time wages and overtime relief under the common law theory of unjust enrichment. Defendant argues that Plaintiffs' request is duplicative and preempted because equitable relief is unavailable when an adequate legal remedy exists. Because Defendant filed this Motion after filing its Answer,

---

[1] 29 U.S.C. §§ 201, *et seq.*
[2] K.S.A § 44-301, *et seq.*

the Court treats this Motion to Dismiss as a Motion for Judgment on the Pleadings. The Court finds that Plaintiffs alleged enough facts to state a facially plausible claim. Moreover, because issues of material fact remain, Defendant is not entitled to judgment as a matter of law. As such, the Court denies Defendant's Motion.

## I.     Factual and Procedural Background[3]

Defendant Medicalodges owns, operates, and manages various nursing home facilities throughout Kansas, Missouri, and Oklahoma. Over the past 25 years, Plaintiffs Yolonda Deleon and Sirena Stell worked off and on for Defendant as certified nursing assistants ("CNAs"). Between 2019 and 2022, Plaintiffs began working for Defendant full time. Defendant hired Plaintiffs through an App called Shiftkey. Shiftkey is an online recruiting company which acts as a clearinghouse for jobs in the medical industry. Defendant allows potential CNAs to pick up shifts from a list of available shifts it inputs into the Shiftkey App.

When CNAs register for a Shiftkey account, they receive a document that asserts that CNA applicants will be placed as independent contractors regardless of their actual work conditions. However, Plaintiffs believe that, based on their work conditions and relationship with Defendant, they were misclassified as independent contractors and should have been classified as employees instead.

Plaintiffs allege that Defendant sets the start and end times of all shifts, requires Plaintiffs to arrive to a shift on time or risk that it be cancelled, requires Plaintiffs to continue working past their shift end-time until replaced by another CNA, directs when Plaintiffs can or cannot take a break, and regularly deducts time for lunch breaks even when Plaintiffs do not take one. Defendant dictates what time Plaintiffs may take residents to the dining room, when they can and cannot give

---

[3] The facts in this section are taken from the parties' pleadings unless otherwise noted.

residents showers, and what time to take residents' vitals. Supervisors check in with CNAs throughout a shift and tell them what to do and when to do it. Defendant controls Plaintiffs' dress code and Hall assignment, among other aspects of Plaintiffs' workday, and retains the absolute right to change any or all of its employer policies and rules without warning.

Plaintiffs contend that these job conditions render them common law employees. As a result, they argue that they are entitled to all the statutory and common law protections afforded to employees, including the right to be paid for all hours worked and the right to be paid an overtime premium for work performed beyond 40 hours in a week.

Because Defendant classifies Shiftkey hires as independent contractors, it refuses to pay overtime premiums to CNAs hired via Shiftkey even when they work more than 40 hours per week. Thus, even though Plaintiffs often work more than 40 hours per week, they receive no overtime compensation. Accordingly, Plaintiffs seek recovery under the FLSA in Count I and recovery under the KWPA in Count II. In the alternative, if Plaintiffs do not qualify for statutory relief, they seek to recover under the equitable theory of unjust enrichment in Count III.

On August 10, 2023, Plaintiffs filed their First Amended Complaint. On September 7, 2023, Defendant filed an Answer denying almost all of Plaintiffs' allegations. It admits only that Plaintiffs are subject to persistent oversight, that Defendant requires its CNAs conform to a dress code—noncompliance with which could result in shift termination, and that Defendant retains the absolute right to change any policies and rules. The Answer also contends that because Plaintiffs are independent contractors, they are not subject to statutory relief.

On September 13, 2023, Defendant filed a Motion to Dismiss Counts II and III under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs responded on October 4, 2023, and Defendant replied on October 11, 2023. Defendant's Motion is now ripe for ruling.

## II. Legal Standard

### A. Untimely Motion to Dismiss

Normally a motion to dismiss for failure to state a claim upon which relief can be granted should be made prior to filing the answer.[4] "A court faced with a post-answer Rule 12(b)(6) motion may exercise its discretion and convert such a motion into a Rule 12(c) motion for judgment on the pleadings if the basis for the Rule 12(b)(6) motion is cognizable within a Rule 12(c) motion."[5] Here, Defendant filed its Answer on September 7, 2023, and subsequently filed this Motion to Dismiss eight days later on September 15, 2023. Because Defendant filed its Motion to Dismiss after filing its Answer, the Court, in its discretion, construes the Motion as one made under Rule 12(c) seeking judgment on the pleadings.[6] In keeping with the parties' designation, the Court will refer to Defendant's Motion as a 12(b)(6) motion to dismiss.

### B. Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed," but "early enough not to delay trial."[7] The standard for dismissal under Rule 12(c) is the same as a dismissal under Rule 12(b)(6).[8] To survive a motion for judgment on the pleadings, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face."[9] All reasonable inferences from the pleadings are

---

[4] Fed. R. Civ. P. 12(b)(6).

[5] *Vanhorn v. U.S. Postal Serv.*, 2024 U.S. Dist. LEXIS 11677, at *1–2 (D. Kan. Jan. 23, 2024).

[6] Fed. R. Civ. P. 12(c); *see also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002) (explaining that a motion filed after an answer "should generally be treated as a motion for judgment on the pleadings").

[7] Fed. R. Civ. P. 12(c).

[8] *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013).

[9] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

granted in favor of the non-moving party.[10] Judgment on the pleadings is appropriate when "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."[11]

### III.   Analysis

**A.   Count II – Plaintiff's KWPA Claim**

Count II alleges that Defendant violated the KWPA by failing to compensate Plaintiffs for all hours worked as provided by the FLSA and recoverable through the KWPA. Defendant argues that Plaintiffs cannot use the KWPA to recover overtime pay or to enforce minimum wage laws. Plaintiffs clarify in their Response that Count II does not seek to use the KWPA to recover pay for overtime or to enforce minimum wage laws. Rather, Count II seeks to recover only "gap time," which is uncompensated work that falls under forty hours per week.[12]

The KWPA was designed to protect workers who were shorted, docked, or cheated out of pay for services performed.[13] Thus, the KWPA provides a statutory mechanism for "enforcing an employment contract,"[14] but "it does not enhance contractual remedies for those who enter into agreements with parties who happen to be their employers."[15] In essence, the KWPA's requirement that employers pay all "wages due" allows employees to enforce their contractual rights for wages owed under the parties' agreement.[16] The KWPA "does not allow employees to enforce other

---

[10] *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012) (citation omitted).

[11] *Id.* (quotations marks and citation omitted).

[12] *See Linde v. Envision Healthcare Corp.*, 2023 U.S. Dist. LEXIS 35268, at *8 (D. Kan. Mar. 2, 2023) (defining "gap time").

[13] *Craig v. FedEx Ground Package Sys., Inc.*, 300 Kan. 788, 792, 335 P.3d 66, 73 (2014) (citing An Act Providing for Wage Payment and Collection: Hearing on H.B. 1429 Before the House Comm. On Labor and Industry, 1973 Leg., 68th Sess. (Kan. 1973) (statement of T. McCune, Kansas Department of Labor)).

[14] *See Campbell v. Husky Hogs, LLC*, 292 Kan. 225, 255 P.3d 1, 7 (2011) (citation omitted).

[15] *Fitzgerald v. City of Ottawa, Kan.*, 975 F. Supp. 1402, 1407 (D. Kan. 1997).

[16] *Blair v. Transam Trucking, Inc.*, 309 F. Supp. 3d 977, 993 (D. Kan. 2018).

statutory rights," such as the right to a minimum wage or the right to receive overtime pay.[17] Therefore, the KWPA "does not provide a cause of action at all for minimum wage and overtime claims."[18]

Defendant correctly argues that Plaintiffs cannot use the KWPA to recover overtime pay or to enforce minimum wage laws. And to the extent Plaintiffs construe their KWPA claim to recover overtime pay or to enforce minimum wage laws, the Court dismisses that claim. Here, however, the Court finds that Plaintiffs make no such claim. Instead, Count II seeks to recover only gap time under the KWPA, and gap time—as claimed in this case—"does not raise overtime or minimum-wage issues."[19] Given that Count II accuses Defendant of "shaving time from [Plaintiffs'] timesheets and/or deducting time for meal breaks," and asks the Court to find Defendant liable "for the 'gap time' wages that were not paid," the Court is unpersuaded by Defendant's argument that Plaintiffs' KWPA claim seeks recovery for minimum wages and overtime pay.

Thus, Plaintiffs' factual allegations regarding gap time, if true, could entitled them to relief under the KWPA. Accordingly, the Court finds that Count II adequately states a claim upon which relief can be granted, and Defendant is not entitled to judgment on the pleadings.

**B.     Count III – Plaintiff's Unjust Enrichment Claim**

Count III alleges that Defendant was unjustly enriched when it received the benefit of Plaintiffs' unpaid work and retained that benefit without providing compensation. Defendant contends that Plaintiffs cannot ask for an equitable remedy when an adequate legal remedy exists.

---

[17] *Id.*

[18] *Charbonneau v. Mortg. Lenders of Am.*, 2020 U.S. Dist. LEXIS 113576, at *25 (D. Kan. June 30, 2020).

[19] *Linde*, 2023 U.S. Dist. LEXIS 35268, at *8.

Defendant suggests that because Plaintiffs seek a legal remedy under the FLSA it cannot also raise the equitable claim of unjust enrichment.

Generally, Defendant's legal arguments are correct. Courts have allowed unjust enrichment claims to proceed on a motion to dismiss "when the claim seeks something more than what the FLSA can provide—such as regular wages not paid at the contracted rate or 'gap time' wages."[20] However, this rule only applies when the claimant is eligible for FLSA relief in the first place. And claimants eligible for FLSA relief must be *employees*.[21] Here, however, the parties dispute whether Plaintiffs are employees or independent contractors. If Plaintiffs are independent contractors, then the FLSA is an inadequate legal remedy because it only provides statutory protections for employees.[22] In that case, because Plaintiffs would not be able to recover under the FLSA, an equitable remedy such as unjust enrichment would be appropriate.

Here, the dispute over whether Plaintiffs are employees or independent contractors is unresolved. If Plaintiffs are found to be employees who could recover unpaid gap time under the KWPA or unpaid overtime under the FLSA, then claims for equitable relief could be eliminated from this case.[23] However, given that several key factual disputes on Plaintiffs' claims remain, judgment on the pleadings is not appropriate at this time. As such, the Court will not prematurely dismiss Count III.

---

[20] *Tommey v. Comput. Scis. Corp.*, 2013 U.S. Dist. LEXIS 34511, at *6 (D. Kan. Mar. 13, 2013) (collecting cases).

[21] *Lewis v. ASAP Land Express, Inc.*, 554 F. Supp. 2d 1217, 1222 (D. Kan. 2008) ("The FLSA governs . . . compensation between an employer and its employees. An independent contractor cannot maintain a claim under the FLSA." (citations omitted))

[22] *Id.*

[23] *See Garcia v. Tyson Foods, Inc.*, 766 F. Supp. 2d 1167, 1188 (D. Kan. 2011) (finding that dismissal of an alternative equitable theory at summary judgment was appropriate because the court had rejected the defendant's construction of the KWPA).

-8-

**IT IS THEREFORE ORDERED** that Defendant Medicalodges, Inc.'s Motion to Dismiss Counts II and III (Doc. 21) is **DENIED.**

**IT IS SO ORDERED.**

Dated this 13th day of February, 2024.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE