**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

YOLANDA DELEON AND SIRENA STELL, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

MEDICALODGES, INC.,

Defendant.

Case No. 2:23-cv-02224-EFM-BGS

**JOINT MOTION FOR APPROVAL OF
FLSA COLLECTIVE ACTION SETTLEMENT AGREEMENT**

Plaintiffs Yolanda Deleon, Sirena Stell, and the FLSA Opt-Ins (collectively as "Plaintiffs"), by undersigned counsel, and Defendant Medicalodges, Inc. ("Defendant"), by undersigned counsel, (collectively the "Parties"), jointly request this Court approve the Parties' FLSA Collective Action Settlement Agreement ("Agreement"). The Parties' Agreement, attached as Exhibit 1, represents a fair and reasonable resolution of Plaintiffs' and Defendant's *bona fide* dispute over the FLSA claims, and meets this Court's standards for judicial approval. Thus, this Court should approve the Agreement in full and dismiss this action with prejudice.

The Agreement provides Plaintiffs with an exceptional recovery in light of the risks inherent in continuing this litigation through trial where Plaintiffs could recover nothing. Defendant has strongly defended the claims Plaintiffs assert here, and continues to deny Defendant committed any wrongdoing or violated any federal or state wage and hour laws. Given the costs, risks, and delays inherent in further protracted litigation balanced against the benefits of settlement and payment now, the Parties' Agreement is in both of their best interests now. As such, the Parties jointly and respectfully request that this Court fully approve their Agreement.

## FACTUAL BACKGROUND

### A. The Parties

This is a wage and hour collective action brought by Yolanda Deleon and Sirena Stell ("Named Plaintiffs"), on their own behalf and on behalf of all others similarly situated, against Defendant. Defendant owns, operates, and manages nursing home facilities in Kansas and in other states. Plaintiffs worked as Certified Nursing Assistants ("CNAs") for Defendant through third-party ShiftKey, LLC ("ShiftKey").

### B. Plaintiffs' Claims and Defendant's Defenses

Plaintiffs brought two different types of claims against Defendant. The first is for unpaid overtime premium wages to which Plaintiffs allege they are entitled. The second is for unpaid "gap" time, to which Plaintiffs contend they are entitled for the following two reasons: (1) they claimed that Defendant required them to work through breaks without pay; and (2) they claimed that Defendant improperly deducted time for short breaks Plaintiffs took. *See* Doc. 13.

Defendant asserts, among others, two affirmative defenses. First, Plaintiffs worked as independent contractors—not employees—and therefore were not entitled to overtime premium pay. Second, the evidence ShiftKey provided regarding hours worked, breaks taken, and pay received did not support Plaintiffs' gap time claims—despite the fact that ShiftKey received this evidence from Plaintiffs themselves. *See* Doc. 20.

### C. Procedural History of the Litigation

Plaintiffs filed their collective and class action Complaint on May 18, 2023. Doc. 1. Defendant filed their Answer on June 22, 2023. Doc. 8. On August 10, 2023, Plaintiffs filed their First Amended Complaint which Defendant subsequently answered on September 7, 2023. Docs.

13, 20. At all times, Defendant denied Plaintiffs' allegations and asserted numerous defenses to Plaintiffs' claims. *See* Docs. 8, 20.

Plaintiffs allege under Count I that Defendant violated the FLSA by failing to pay all wages due, including overtime premiums for hours worked more than 40 in a workweek. *Id.* at ¶¶ 60–61. Plaintiffs sought to certify an FLSA collective action for "All Certified Nursing Assistants who worked in Medicalodges facilities in Kansas at any time beginning three years before the commencement of this action who worked more than 40 hours in a work week (the "FLSA Collective")." 14. Plaintiffs allege under Count II that Defendant violated the Kansas Wage Payment Act ("KWPA") by failing to pay them for "gap time," such as by shaving time from timesheets and deducting time for meal breaks that they knew were not actually taken. *Id.* at ¶¶ 70–71.

Plaintiffs allege under Count II that Plaintiffs and putative class members were entitled to recover for their allegedly unpaid wages through an unjust enrichment/quantum meruit claim. *Id.* at ¶¶ 72–77. Plaintiffs brought Counts II and III as a putative class action under Federal Rule of Civil Procedure 23 for "All Certified Nursing Assistants who worked in Medicalodges facilities in Kansas at any time during the applicable limitations period (the "Kansas Class")." *Id.* at ¶ 16.

On September 7, 2023, Defendant filed an Answer to Plaintiffs' First Amended Complaint. Doc. 20. On September 13, 2023, Defendant moved to dismiss Counts II and III of Plaintiffs' First Amended Complaint which Plaintiffs opposed. *See* Docs. 21–22, 25, 28. On February 13, 2024, the Court denied this Motion. Doc. 32.

On September 15, 2023, Plaintiffs filed their Motion for Conditional FLSA Certification and Memorandum in Support. Docs. 23–24. Defendant vigorously opposed this Motion. Doc. 26. Plaintiffs subsequently filed their Reply. Doc. 30. On April 1, 2024, the Court granted this Motion

in part. Doc. 33. The Court ordered notice be sent to: "All Certified Nursing Assistants who worked in Medicalodges facilities through ShiftKey in the last three years." *Id.* During the Court-approved notice and opt-in period, 197 individuals filed consents to opt into the FLSA Collective.

The Parties have engaged in extensive formal and informal discovery that has aided in the resolution of this matter. Indeed, the Parties had to repeatedly subpoena ShiftKey to obtain employment, timekeeping, and pay data necessary to litigate the case. In addition to this formal written discovery, the Parties engaged in informal discovery so that the Parties were able to fully evaluate the case for settlement purposes.

Beginning in July 2024, the Parties began engaging in arm's length settlement negotiations which continued for the next seven months. On January 29, 2025, the Parties finally agreed to resolve this disputed litigation. The Parties have since then negotiated the Agreement terms. On May 5, 2025, the Parties executed their formal Agreement. Ex. 1. Specifically, the Parties reached the following settlement which resolved their *bona fide* dispute:

- Gross Settlement Amount $125,000
- Collective Counsel's Attorney Fees $ 41,663 (33.33%)
- Collective Counsel's Costs $ 7,067.42
- Named Plaintiffs' Service Award $ 1,250 (each)
- Settlement Administration $ 6,079

*See* Ex. 1, Agreement.

**D. Summary Of The Parties' Settlement Agreement**

**1. The Gross Settlement Amount**

The Parties agreed to settle Plaintiffs' FLSA and state law wage and hour claims for $125,000.00 (the "Settlement Fund."). *Id.* at ¶ 3. The Settlement Fund includes the settlement payments to Named Plaintiffs and the Opt-in Plaintiffs, Collective Counsel's attorneys' fees and out-of-pocket litigation costs, a Service Award to each Named Plaintiff, and the costs of settlement

administration. *Id.* The portion of the Settlement Fund remaining after the above deductions, subject to Court approval, shall be distributed to Plaintiffs. Defendant shall not make any payment beyond the Gross Settlement Amount.

**2. The Settlement Collective Members**

The Agreement includes Named Plaintiffs and the 197 Opt-In Plaintiffs who have joined the Lawsuit and have not withdrawn their consent forms. Together, these 199 persons comprise the Settlement Collective Members.

**3. The Individual Settlement Allocation.**

Each Settlement Collective Member will receive a minimum $25 payment. In addition, each Settlement Collective Member will receive a *pro rata* allocation of his/her missed meal period, break, and unpaid overtime premium compensation. However, under no circumstance shall Consideration paid to the Collective Members exceed the Gross Settlement Amount.

**4. Limited Release of Wage and Hour Claims**

The Agreement provides, among other terms, that Named Plaintiffs and Collective Members who cash their settlement checks agree to a limited release of their wage and hour claims. *Id.* at pp. 6-7. In addition, Named Plaintiffs waive additional claims given their Service Award. *Id.*

**5. Collective Counsel's Negotiated Fee and Cost Award**

Under the Agreement, Collective Counsel shall receive attorney's fees of $41,663 (One-Third (33.33%) of the Settlement Fund) and their costs of $7,067.72. The attorney's fees and costs combined equal $48,730.72 which is 39% of the Settlement Fund.

**6. Service Awards for Named Plaintiffs**

Pursuant to the Agreement and subject to Court approval, Named Plaintiffs will each receive a $1,250 service award in recognition of their time and effort they expended in bringing the case on behalf of the Settlement Collective Members, and for their execution of their specific release. Plaintiffs did not seek certification on their putative class action under Federal Rule of Civil Procedure 23.

## ARGUMENT

**A. This Court's Legal Standards for Approval of FLSA Collective Action Settlements.**

The Parties must present a settlement of claims under the FLSA to this Court for review and determination of whether the settlement is fair and reasonable. *Jackson v. U.S. Bancorp*, 2022 WL 744693, at *2 (D. Kan. Mar. 11, 2022) (*citing Peterson v. Mortg. Sources Corp.,* 2011 WL 3793963, at *4 (D. Kan. 2011); *see also Florece v. Jose Pepper's Restaurants, LLC*, *No.* 20-2339-ADM, 2021 WL 5042715, at *3 (D. Kan. Oct. 29, 2021). To approve an FLSA settlement, "the Court must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned." *Jackson*, 2022 WL 744693, at *2 (quoting *Elston v. Horizon Glob. Ams., Inc.*, No. 19-2070-KHV, 2020 WL 2473542, at *3 (D. Kan. May 13, 2020)).

"The court must also evaluate whether any proposed service award to the named plaintiff is reasonable." *Id.* The Court may enter a stipulated judgment only after scrutinizing the settlement for fairness." *Id.* "If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation." *Id.* (*citing Hoffman v. Poulson Pizza,* 2017 WL 25386, at *2 (D. Kan. 2017) (quotation marks and citation omitted). The settlement agreement must also contain an award of reasonable attorneys' fees. *Id.*

(*citing Peterson,* 2011 WL 3793953 at *5). Unlike class actions brought pursuant to Fed. R. Civ. P. 23, this Court may approve an FLSA collective action settlement without a separate fairness hearing. *Id.* (*citing Fleriage v. US Foods, Inc.,* 2020 WL 4673155, *10 (D. Kan. 2020).

Although courts have often suggested that a final collective certification is a prerequisite for FLSA settlement approval, a key authority underlying this line of decisions required this certification in the course of upholding a settlement of a Title VII discrimination class action under Rule 23. *Id.* (*citing McCaffrey v. Mortg. Sources Corp.,* 2011 WL 32436, at *3 (D. Kan. 2011) (other citations omitted)). "Rule 23 actions are fundamentally different from collective actions under the FLSA." *Id,* (*citing Genesis Healthcare Corp. v. Symczyk,* 569 U.S. 66, 74 (2013)). "Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, FLSA collective actions do not implicate the same due process concerns as do Rule 23 actions." *Id.* (citation omitted). Settlement of an action under FLSA cannot bind persons who have not affirmatively opted into the action. *Id.* (citations omitted). Thus, some of courts have expressly recognized that approval of an FLSA settlement does not require final approval of a collective action. *Id.* (citations omitted).

**B. The Court Should Approve the Parties' Settlement Because it Meets This Court's Approval Standards.**

Here, the Parties' Settlement easily meets the criteria for approval. The Settlement resolves a *bona fide* dispute, and the Settlement results are fair and reasonable. Thus, this Court should approve the Settlement and dismiss this case with prejudice.

**1. The litigation involves a bona fide dispute.**

To establish a bona fide dispute, "the parties must provide the following information: (1) a description of the nature of the dispute (e.g., a disagreement over coverage, exemption or computation of hours worked or rate of pay); (2) a description of the employer's business and the

type of work that the employees perform; (3) the employer's reasons for disputing the employees' right to the wages or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage." *Elston v. Horizon Glob. Americas, Inc.*, No. CV 19-2070-KHV, 2020 WL 2473542, at *4 (D. Kan. May 13, 2020).

Here, the Settlement resolves a bona fide dispute. Defendant is in the care home business, and operates care home facilities in Kansas and adjacent states. Plaintiffs are CNAs who performed nursing assistant duties for the facilities and their residents. Plaintiffs received their shifts and work assignments from and through third-party ShiftKey.

Plaintiffs allege that Defendant failed to pay them for all hours worked by working them off the clock and illegally deducting break time, and that Defendant failed to pay them overtime premium pay and instead paid them only straight time. Plaintiffs believe their time records show these deductions and that Defendant paid all overtime at the straight time rate. . If proven, these allegations would show that Defendant violated applicable wage and hour laws, and that Plaintiffs are entitled to compensation as a result.

Defendant, however, denies Plaintiffs allegations based on, among other arguments or defenses, that Plaintiffs were paid for all hours worked and that Plaintiffs are not "employees" of Defendant entitled to overtime premium pay. If proven, Defendant's defenses would negate any claims that Plaintiffs have to unpaid compensation. Because the computation of wages owed is no longer a subject of dispute in light of the Parties' settlement, they do not provide each party's estimate of the number of hours worked and the applicable wage.

**2. The Settlement terms are fair and reasonable.**

"To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales." *Marquez v. Midwest Div. MMC, LLC*, No. 19-2362-DDC-ADM, 2022 WL 4355298, at *11 (D. Kan. Sept. 20, 2022) (quoting *Solis v. Top Brass, Inc.*, 2014 WL 4357486, at *3 (D. Colo. Sept. 3, 2014); *see also Jackson*, 2022 WL 744693, at *3). "To determine whether a proposed FLSA settlement is fair and equitable, courts examine the factors applicable in the Rule 23(e) settlement approval context, as articulated in *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180 (10th Cir. 2002)." *Florece v. Jose Pepper's Restaurants, LLC*, No. 20-2339-ADM, 2021 WL 5042715, at *3 (D. Kan. Oct. 29, 2021). These factors are "(1) whether the parties fairly and honestly negotiated the proposed settlement; (2) whether serious questions of law and fact exist that place the litigation's ultimate outcome in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the parties' judgment that the settlement is fair and reasonable." *Id.* at *4.

In this case, the Parties arrived at the Settlement after months of active negotiations between them, the Parties fully support the Settlement, serious questions of law and fact surround the case outcome, and the alternative to the Settlement is further protracted and expensive litigation for years. As such, the Parties' Agreement is fair and reasonable. The Parties—with the assistance of counsel—have participated in drafting the Settlement Agreement, have carefully reviewed the Agreement, and now urge this Court to approve the Agreement.

As set forth above, the Parties reached the Settlement after extensive negotiations over a seven-month period. The Parties actively contested and disputed the issues, and the ultimate outcome is unclear. Continued, protracted litigation of this case will be uncertain and expensive.

Indeed, given the defenses Defendant asserted including lack of employee status, continued litigation may ultimately result in no recovery at all for Plaintiffs. In contrast, the Parties' Settlement offers members a cash settlement award which is both definite and valuable.

**3. The Settlement contains an award for reasonable attorney's fees.**

Here, the Parties' Settlement provides for reasonable attorney's fees. To determine whether attorney's fees are reasonable, "[t]he Tenth Circuit applies a hybrid approach, which combines the percentage fee method with the specific factors traditionally used to calculate the lodestar." *Jackson,* 2022 WL 744693, at *3 (*quoting Barbosa v. Nat'l Beef Packing,* 2015 WL 4357486, at *3 (D. Colo. 2014)); *see also Florece v. Jose Pepper's Restaurants, LLC*, No. 20-2339-ADM, 2021 WL 5042715 at *6 (Kan. Oct. 29, 2021). This hybrid approach allows this Court to consider the factors articulated in *Johnson v. Georgia Highway Express* including "(1) time and labor required; (2) novelty and difficulty of the questions presented in the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases." "[R]arely are all of the *Johnson* factors applicable." *Jackson,* 2022 WL 744693, at *3 (*quoting Barbosa v. Nat'l Beef Packing,* 2015 WL 4357486, at *3 (D. Colo. 2014) (citations omitted).

Courts generally find that an attorney's fee award of around one-third of the total settlement fund is reasonable. *Florece v. Jose Pepper's Restaurants, LLC*, No. 20-2339-ADM, 2021 WL 5042715, at *6 (D. Kan. Oct. 29, 2021. In this case, the attorney's fee award is one-third (33.33%)

of the Settlement Fund. This 33% fee is well within the range this Court has previously found reasonable. *Id. at *4* (40% fee found reasonable).

**C. The Attorney's Fees and Costs Are Reasonable.**

Collective Counsel's request for attorneys' fees in the amount of one-third, $41,663, is reasonable and fair. The FLSA provides "[t]he court … **shall**, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added); *see also Garcia*, 770 F.3d at 1308; *Tabb*, 2018 WL 5269828, at *1.

Although an award of reasonable attorneys' fees under the FLSA is **mandatory**, district courts generally only examine (at most) whether the fee award in an FLSA settlement agreement is reasonable. *See Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 415 n.5 (1978) (recognizing that an award of fees and costs is "mandatory for prevailing plaintiffs" in FLSA actions); *Olivo*, 526 Fed. Appx. at 854 ("As prevailing parties on this claim, plaintiffs were entitled to an award of reasonable attorney's fees under 29 U.S.C. § 216(b)"); *Weiser v. Pathway Servs. Inc*., 2019 WL 6723563, at *1 (N.D. Okla. Aug. 26, 2019) (same); *Ali v. Jerusalem Restaurant, Inc*., 2015 WL 1345326, at *5 (D. Colo. Mar. 23, 2015) (same). An award is reasonable if it is "adequately compensatory to attract competent counsel yet which avoids a windfall for lawyers." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

"The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel is retained on a contingent fee basis, as in this case." *Brown v. Phillips Petroleum Co*., 838 F.2d 451, 484 (10th Cir. 1998); *see Uselton v. Com. Lovelace Motor Freight, Inc*., 9 F.3d 849, 853

(10th Cir. 1993); *Lucken Family Ltd. P'ship, LLP v. Ultra Res., Inc.*, 2010 WL 5387559, at *2 (D. Colo. Dec. 22, 2010). In common fund cases, utilizing the percentage method to calculate attorney fee awards is the standard. *See Gottlieb v. Barry*, 43 F.3d 474, 482-83 (10th Cir. 1994). The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel "as to their expected recovery," and encouraging early settlement before substantial fees and expenses have been accumulated. *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010).

Here, the requested attorney's fees are reasonable as both a percentage of the total settlement fund and under the above *Johnson* factors. Thus, this Court should approve the fees.

**1. FLSA Collective Actions Are Complicated, and Collective Counsel is Experienced in Handling Such Cases.**

Cases involving employee overtime rights are governed by highly technical and specialized state and federal wage statutes and regulations. *See, e.g.*, *Whittington*, 2013 WL 6022972, at *6; *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013) ("[W]age and hour collective and class actions are, by their very nature, complicated and time-consuming"). Three fundamental questions governed this case: (1) whether Plaintiffs were employees of Defendant; (2) whether Plaintiffs performed work off-the-clock and without compensation; and (3) whether these questions could be resolved on a collective basis. Analysis of these questions and effective prosecution of these claims required not only extensive knowledge of applicable case law and regulations, but also insight into successfully litigating cases under the FLSA.

Collective Counsel's skill, knowledge, reputation, and experience benefited Plaintiffs in FLSA cases like this case. FLSA cases are the main focus of Collective Counsel's practice. Collective Counsel extensively litigates FLA collective actions nationwide. This experience

provides Collective Counsel with specialized knowledge of these cases and this industry. Ex. 2, at ¶¶ 43-44; Ex. 3, at ¶¶ 3-29; Ex. 4, ¶¶ 4-8.

Collective Counsel's experience has caused them to review and become familiar with a large body of documents and information concerning FLSA litigation, as well as the evidence and testimony necessary to the successful prosecution of FLSA collective actions, which benefits cases such as this, and maximizes the settlement value of the case. Indeed, Collective Counsel has successfully settlement collective and class action wage and hour cases across the United States. *Id.*

Especially considering the number of Plaintiffs, Collective Counsel resolving the procedural issues, pursuing the merits, and calculating damages is inherently risky, costly, and time consuming. *See Whitlington,* 2014 WL 6022927, *6. As courts in the Circuit have noted, attorneys handling such large cases are precluded by the ticking clock from taking other cases, given that counsel took a chance on the possible recovery and a contingent fee space rather than strictly working on an hourly basis. *Id.* Collective Counsel spent significant time and incurred out of pocket expenses, payment for which was entirely contingent on the outcome of the matter, thus making this case relatively undesirable. *See Jackson,* 2022 WL 744693, at *4 ("counsel assumed a substantial risk by taking this case on a contingency basis"); *Aragon v. Clear Water Prod. LLC,* 2018 WL 6620724, *6 (D. Colo. Dec. 18, 2018) (same). In fact, the possibility existed that this case would result in no recovery for the time and efforts exerted by Collective Counsel.

**2. This Case Required Substantial Time and Labor, and Collective Counsel's Costs Are Reasonable.**

Regarding Collective Counsel's time and efforts, this matter has been pending for more than a year and a half. During this time, Collective Counsel consisted of three lawyers and a paralegal who worked on this lawsuit and performed extensive work. Indeed, Collective Counsel

have invested 519,10 hours of time in this litigation. Ex. 2, at ¶¶ 36-41; Ex. 3, at ¶¶ 30-32; Ex. 4, ¶¶ 22-26. This represents a significant amount of time expended to reach resolution of this case with a corresponding loadstar of $252,832,50 at a blended hourly rate of $487.06. As such, Collective Counsel are requesting about 16.5% of their current lodestar. *Id.* This favors this Court approving the requested attorney's fee.

In addition, Collective Counsel has incurred more than the $7067.72 in unreimbursed costs for which Collective Counsel seeks reimbursement. "Expenses are compensable in a common fund case if the particular costs are the type typically billed by attorneys to paying clients in the marketplace." *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cty., Okla.,* 8 F.3d 722, 725-26 (10th Cir. 1993). Here, Collective Counsel's costs include only reasonable out of pocket expenditures for court costs and filing fees, process service, and for the notice administrator to distribute and process the FLSA collective notice. Collective Counsel is not seeking reimbursement for other costs such as photocopying, postage, delivery fees, PACER charges, legal research, or other such types of costs normally billed to clients. Ex. 2, at ¶ 45; Ex. 4, ¶ 28. *see Aragon,* 2018 WL 66620724, at *7; *In re Crocs, Inc. Sec. Litig.,* 2014 WL 4670886, at *5 (D. Colo. Sept. 18, 2014).

**3. Collective Counsel Represented Plaintiffs on a Contingency Basis.**

Next, the negotiated, and agreed upon, contingency fee in the contract between Plaintiffs and Collective Counsel provides for a contingency fee of One-Third of the settlement amount plus all necessary case expenses. Ex. 2 at ¶¶ 34-35. Collective Counsel, working on contingency, had 100% of the risk of loss, advanced all costs, which if not recovered, would be lost, and Collective Counsel would have carried various advanced costs, as well as unrecoverable time spent. *Id.*

Collective Counsel assumed an enormous risk prosecuting this matter since there was a distinct possibility of no recovery. *Id*.

Courts including this Court have consistently found this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award. *See, e.g.*, *Jackson,* 2022 WL 744693, at *4 (contingency fee risk favors settlement approval); *Aragon*, 2018 WL 6620724, at *6 (same); *Shaw v. Interthinx, Inc*., 2015 WL 1867861, at *4 (D. Colo. 2015) (same). The "process of reviewing and approving stipulated attorneys' fees in the event of a settlement [of FLSA claims] is more deferential than resolving attorneys' fees in a disputed case." *Melgar v. OK Foods*, 902 F.3d 775, 779-80 (8th Cir. 2018). In particular, "where the parties have already agreed upon the fees to be paid, any required review need not be a line-by-line, hour-by-hour review of the attorneys' fees." *Id.* at 779. To the contrary, the review of FLSA settlements "requires … deference … to the parties' agreement." *Id.*

**4. Collective Counsel's Requested Fee is Within the Customary Range.**

As discussed *supra*, Collective Counsel's request for attorneys' fees in the amount of One-Third of the Gross Settlement is well within the range of reasonableness for contingency fee cases in this Circuit and is significantly less than Collective Counsel's lodestar. Ex. 2, at ¶¶ 36-41; Ex. 3, at ¶¶ 30-32; Ex. 4, ¶¶ 22-26.

**5. The Degree of Success Obtained Is High.**

Finally, as discussed *supra,* the degree of success here is high and supports Collective Counsel's requested fee. Ex. 4, ¶ 14. All Plaintiffs will receive a $25 minimum plus a pro rata share of any unpaid break and/or unpaid overtime premium. In contrast, Plaintiffs could have received nothing had Defendant prevailed on its many defenses.

For the above reasons, Collective Counsel's One-Third fee and necessary expenses are reasonable here. Thus, this Court should approve them.

**D. The Court Should Approve Plaintiffs' Service Award.**

Plaintiffs requested Service Awards pf $1,250 each are reasonable, and Defendant does not object to them. Plaintiffs are able to receive a reasonable incentive payment as part of a class or collective action settlement. *See*, *e.g.*, *Chieftan Royalty Co. v. Enervest Energy Institutional Fun XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017); *Gundrum v. Cleveland Integrity Servs., Inc.*, 2017 WL 3503328, at *5 (N.D. Okla. Aug. 16, 2017) (granting FLSA named plaintiffs normal service awards of $20,000); *Shaw*, 2015 WL 1867861, at *1 (approving $10,000 incentive award to named plaintiff in wage and hour dispute); *see also Lucken*, 2010 WL 5387559, at *8 (approving $10,000 service award to named plaintiff). Similarly, this Court in *Jackson* approved a service award of $2,500 which is the same amount as the combined Service Awards here. *Jackson,* 2022 WL 744693, at *4 ($2,500 service award is "within the range of similar incentive awards). Therefore, the proposed award of $1,250 each for both Named Plaintiffs is reasonable.

## CONCLUSION

For these reasons, the Parties request this Court to grant the Parties' Motion For Approval, approve the Parties' Settlement Agreement, and dismiss this action with prejudice.

/s/ Rowdy B. Meeks (w/consent)
Rowdy B. Meeks, KS #16068
ROWDY MEEKS LEGAL GROUP LLC
8201 Mission Rd., Suite 250
Prairie Village, KS 66208
Telephone: (913) 766-5585
Facsimile: (816) 875-5069
rowdy.meeks@rmlegalgroup.com

*Attorneys for Plaintiffs*

/s/ Francis M. Schneider
Alan L. Rupe, KS #08914
Francis M. Schneider, KS #27896
LEWIS BRISBOIS BISGAARD & SMITH LLP
1605 N. Waterfront Parkway, Suite 150
Wichita, KS 67206
Telephone: (316) 609-7900
Facsimile: (316) 462-5746
alan.rupe@lewisbrisbois.com
francis.schneider@lewisbrisbois.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I certify that on May 6, 2025, I filed the above Joint Motion For Settlement Approval using the Court's CM/ECF system which will send notification to all counsel of record.

/s/ Rowdy B. Meeks
Rowdy B. Meeks